CHARLES E. HILL, RESPONDENT, *v.* NEWICHAWANICK COMPANY, APPELLANT.

*Dividend payable at future time — who entitled to.*

The board of directors of a corporation passed, on January 25, 1873, the following resolution : "At a meeting of the board of directors, held this day, voted to pay a dividend of four per cent this day, and another of like amount at option of agent from earnings of last year."

The plaintiff was on that day the owner of certain shares of the company's stock, then deposited by him as collateral security with a bank, by which they were, in July, sold at private sale. On the 7th of November, the company's agent declared the second dividend of four per cent in pursuance of the resolution. *Held*, that the plaintiff was the owner of the stock at the time the dividend was declared, and that he, and not the purchaser, was entitled thereto.

APPEAL from a judgment in favor of the plaintiff, entered on the trial of this action by the court.

The action involves the question of title to a dividend declared on stock under the following resolution, adopted by the directors of defendant, a manufacturing corporation in Maine, on the 25th day of January, 1873 :

"At a meeting of the board of directors held this day :

"Voted, to pay a dividend of four per cent this day, and another of like amount, at option of agent, from earnings of last year."

On that day, the plaintiff was the owner of 275 shares of stock,

held by the president of the Park Bank as collateral to a loan. The bank held these certificates until the 22d day of March, 1873, when it surrendered them; and caused the stock to be transferred to its president on the books of the company.

About the twenty-fifth day of July, Mr. Kitchen, president of the Park Bank, offered to sell Mr. Burleigh, the agent of the company at whose option the dividend was payable, this stock and Mr. Burleigh bought it. On the 7th day of November, 1873, defendant's agent declared a four per cent dividend, which was paid to the parties whose names appeared on that day as stockholders on the books of the company.

On the 23d day of December, 1873, the plaintiff demanded this dividend, which was refused, and thereupon commenced this action, alleging that he was the owner of the stock when the dividend was declared.

*William H. Arnoux,* for the appellant. Dividends are not severable from the stock of a corporation, until the time fixed for the payment thereof; but, until payable, pass with the stock to a transferee, as an incident thereto, in the same manner as rent not due under a lease passes to the grantee of the fee. (*Burroughs* v. *North Carolina R. R. Co.,* 67 N. C., 376 ; *March* v. *Railroad,* 43 N. H., 520 ; *Minot* v. *Paine,* 99 Mass., 111; *The City* v. *Lamson,* 9 Wall., 483 ; *Clive* v. *Clive,* 1 Kay, 600 ; *Anson* v. *Towgood,* 1 Jac. & Walk., 617 ; *Jones* v. *Ogle,* L. R., 8 Ch. App., 192; *Hague* v. *Dandeson,* 2 Ex., 741 ; *Wilson* v. *Harmon,* 2 Ves., 672; *Sherrard* v. *Sherrard,* 3 Atk., 502 ; *Pearly* v. *Smith,* id., 260 ; *Browne* v. *Collins,* L. R., 12 Eq., 586 ; *Johnson* v. *Moore,* 27 L. J. [Ch.], 453; *Kane* v. *Bloodgood,* 7 Johns. Ch., 90 ; *Clapp* v. *Astor,* 2 Edw. Ch., 379 ; *Hyatt* v. *Allen,* 56 N. Y., 553 ; *Earps' Will,* 1 Pars. Eq., 453 ; *Goodwin* v. *Hardy,* 57 Me., 143, 145 ; *Van Wincklen* v. *Paulson,* 14 Barb., 654; *Beebe* v. *Coleman,* 8 Paige, 392.) The resolution of the board of directors amounted to a delegation to Mr. Burleigh of their authority to declare a dividend. This they had the legal power to do. (*Barnes* v. *The Ontario Bank,* 19 N. Y., 157; *Hoyt* v. *Thompson's Executors,* 19 id., 216 ; *Olcott* v. *Tioga R. R. Co.,* 27 id., 557–559.) A dividend has no legal existence until a time is fixed for its payment. (*Wright* v. *Vt. and*

*Mass. R. R. Co.*, 12 Cush., 68, 76, 77 ; *Burns* v. *Clark*, 37 Barb., 496 ; *Atkins* v. *Hiccocks*, 1 Atk., 500 ; *Andrew* v. *N. Y. Bible and Prayer Book Society*, 4 Sandf., 173 ; 1 Roper on Legacies, 562 ; *Caw* v. *Robertson*, 5 N. Y., 125.)

*Charles D. Adams*, for the respondent. A dividend declared is a portion of the earnings of the corporation severed from the common fund, and set apart for the benefit of the stockholders at the time of the declaration. (*Jones* v. *Terre Haute and Richmond R. R. Co.*, 29 Barb., 529 ; affirmed, 57 N. Y., 196.) It becomes henceforth a trust fund in the hands of the corporation for the stockholders at the time, and cannot be devoted to other objects. (Angell & Ames on Corporations [8th ed.], 541, n. ; 2 Redfield on Railways, 529, § 240 ; *King* v. *Peterson R. Co.*, 5 Dutcher, 82 ; and on appeal, 5 id., 504 ; *Phelps* v. *Farmers and Mechanics' Bank*, 26 Conn., 272 ; *Carpenter* v. *N. Y. and N. H. R. R. Co.*, 5 Abb. Pr., 277 ; *Le Roy* v. *The Globe Ins. Co.*, 2 Edw. Ch., 657 ; 57 N. Y., 196.) Declaring a dividend payable at a future day, as corporations usually do, is only fixing the day the debt will be due. The debt itself exists, and is owing from the date of the declaration. (*Beers* v. *Bridgeport Spring Co.*, N. Y. Weekly Digest, Feb. 14, 1876, p. 8.) The sale and delivery of stock, after the declaration of a dividend and before it is payable, does not carry with it the dividend. (*Lombard* v. *Case*, 45 Barb., 95 ; *Spear* v. *Hart*, 3 Robts., 420 ; 65 Barb., 397 ; *March* v. *Eastern R. R. Co.*, 43 N. H., 515.)

DAVIS, P. J.:

It is very clear that both dividends were intended to be made and paid out of the earnings of the year 1872. The resolution of the board of directors, passed January 25, 1873, was in these words : " At a meeting of the board of directors, held this day, voted, to pay a dividend of four per cent this day, and another of like amount at option of agent, from earnings of last year."

Read in connection with the statement of the affairs of the company presented by the agent, it is manifest that the directors concluded and decided that the profits of the year 1872 were sufficient to bear a dividend of eight per cent, and that enough of such

profits were in hand to pay four per cent presently, and that, whenever the uncollected profits should be realized from the outstanding indebtedness to the company, four per cent more could properly be paid. They therefore declared the second dividend, but left the time of its payment to be fixed at "the option of the agent," through whom the collections were to be made.

It is expressly admitted in the case, that the agent exercised that option on the 7th of November, 1873, by fixing that time as the day for payment of the second dividend. It does not appear in the evidence that the profits of the year 1872 were not adequate to pay the second dividend. It must be assumed they were sufficient, because that fact is not denied, although the agent is of the opinion that payments of the second dividend were made out of moneys earned in 1873. The moneys earned and received, both in 1872 and 1873, seem to have been used indiscriminately, but that fact is of no importance, unless there be clear proof that the profits of 1872 were not sufficient to pay the dividend.

The only substantial question in the case is: who was entitled to the second dividend declared for the year 1872, the owner of the stock when the dividend was declared, or the owner when the day of payment was subsequently fixed? The Park Bank held the legal title of the stock when the dividend was declared by the directors, but as it held the same in pledge as collateral security for a debt of plaintiff, he was the beneficial owner. The record title in the stock register of defendants was in plaintiff, and upon his draft the four per cent payable immediately, was paid to the Park Bank, and placed to his credit. He also gave to the bank an order for the payment of the second four per cent, whenever it should become payable. The bank offered the stock for sale at auction, in Boston, and fixed the price at 115, with the dividend already declared, but, as it was bid in by the bank, the equitable relations of the parties were not changed, although afterward the president caused the stock to be transferred to himself on the books of the company.

In July following, and while holding such order, the Park Bank sold the stock to one Burleigh who was the agent of the company. Doubtless, Burleigh thought the sale carried with it the second

dividend of four per cent, but the terms of the sale were silent on that subject.

After the sale, the plaintiff revoked the order for payment of the dividend to the bank, and the bank gave him a consent in writing that the dividend might be paid to him. He demanded it after the day of payment had been fixed by the agent, but the company paid it to Burleigh the agent, as the owner of the stock.

The learned court below, held that the plaintiff was entitled to the dividend, and gave judgment accordingly. In this conclusion we think the court was correct.

The transaction of sale, it is to be observed, was a private one between the bank and Burleigh. It was not made through the agency of brokers at a board or exchange governed by known usages and rules which enter into and form part of the contract.

It is understood that sales of stock made at the board of brokers in this city at any time before the day fixed for the closing of the books of transfer of the corporation or company declaring a dividend payable at a future day, carry with them the dividend so declared, and the price paid is regulated accordingly. After the books are closed, the sales are understood to be ex-dividend, and the price is correspondingly affected, by the fact that the seller retains and is to collect the dividend. Those usages or rules have nothing to do with this case and the offer to prove them was properly excluded.

The dividend of the earnings of 1872, already declared at four per cent, although payable at a day to be fixed by the agent of the company to suit its own convenience, was not a growing incident of the stock, at the time of its sale, but a fixed and determinate indebtedness to the then stockholder, with nothing uncertain about it except the day of payment, which was left discretionary with the agent of the corporation. It would not be transferred to a subsequent purchaser of the stock without special agreement, nor was it necessary that it should be reserved on such sale by special agreement. It was a divided share of past earnings, and became, in law, a severed indebtedness payable to the then owner of the stock, without regard to subsequent transfers of such stock. A different rule would apply to an attempted division of *future* earnings; but that was not this case.

We see no error sufficiently material, in the several rulings excepted to on the trial, or to the findings or refusals to find, to call for our interference.

The judgment should therefore be affirmed, with costs.

BRADY and DANIELS, JJ., concurred.

Judgment affirmed.